UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| OTTO BISHOP; and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,<br><br>     Plaintiffs,<br> vs.<br><br>GOODYEAR TIRE AND RUBBER COMPANY; and GOODYEAR DUNLOP TIRES NORTH AMERICA, LTD.,<br><br>     Defendants. | CIV. 13-5062-JLV<br><br>ORDER |

## INTRODUCTION

Plaintiff Otto Bishop and State Farm Mutual Automobile Insurance Company ("Mr. Bishop") move the court for leave to supplement the designation of expert witnesses after the passage of the deadline to disclose expert witnesses. (Docket 44). Mr. Bishop also moves the court for an order granting his motion to compel discovery. (Docket 46). Defendants Goodyear Dunlop Tires North America, Ltd. and the Goodyear Tire and Rubber Company ("defendants") resist both motions. (Dockets 49 & 60).

This case arises out of a motorcycle accident on Interstate 90 in Jackson County, South Dakota, on August 1, 2010. (Docket 31 at p. 2). Mr. Bishop allegedly sustained injuries in the accident because of a failure in the rear tire which caused him to lose control of the motorcycle. Id. On July 22, 2013, Mr.

Bishop filed a complaint against defendants asserting, in part, that the tire's defective condition directly and proximately caused him mental and physical injuries. (Docket 31 at p. 3). The court first considers Mr. Bishop's motion to compel discovery of information related to the allegedly defective tire (Docket 46) and, subsequently, Mr. Bishop's motion to supplement his designation of expert witness disclosures. (Docket 44).

I. **Motion to Compel Discovery**

**BACKGROUND**

The tire under debate is a Dunlop D402 MU85B16M/C Tire bearing DOT number DAF4M17M3107 with black sidewalls. (Dockets 46 at p. 5; 60 at p. 2). Mr. Bishop asserts the manufacturing defects of excess mold ring flash and non-fill in the bead area caused the tire to lose air pressure and triggered the crash. (Docket 31 at pp. 1-2). Mr. Bishop seeks an order compelling defendants to produce discovery related to the same Dunlop tire, only with white sidewalls. (Docket 46). Defendants resist Mr. Bishop's motion to the extent he requests additional testing data and design drawings for the tire in question. (Docket 60).

**DISCUSSION**

Mr. Bishop requests the testing data and design drawings for the Dunlop D402 MU85B16M/C white sidewall tires. Mr. Bishop asserts the information is relevant due to similarities between the white sidewall tire and the black sidewall tire. (Docket 46 at p. 6). Mr. Bishop further requests the deposition transcript of Ian Willetts, a prior corporate representative for

2

Goodyear Dunlop Tires North America, Ltd., from an earlier case, along with four deposition exhibits. Id. at 1-4, 6-7. Defendants do not object to the distribution of Ian Willetts' deposition transcript and four exhibits. (Docket 60 at p. 1). The court grants Mr. Bishop's motion to compel with regard to the referenced transcript and four exhibits from Mr. Willetts' prior deposition.

Defendants object to Mr. Bishop's request for the testing data and design drawings of the white sidewall tires. Id. Defendants maintain because the white sidewall tire is not "built and cured" under the same specifications as the black sidewall tire, the data and drawings of the white sidewall tire are irrelevant to this case. (Docket 60 at pp. 5-6). Defendants assert the data from the internal testing Mr. Bishop requests determines neither "a tire's air sealing capability [n]or whether mold ring flash or non-fill could contribute to air loss." Id. at 6. Because Mr. Bishop's main argument contends the crash was caused by excess mold ring flash and non-fill in the bead area, the defendants assert it is not relevant to include it in discovery because the information does not concern either of the alleged defects. Id. Defendants argue "[s]imply because the [black and white sidewall] tires have the same load/speed index . . . does not make them substantially similar for purposes of this lawsuit." Id. at 4.

A. **Scope of Discovery**

The scope of discovery is broad under Fed. R. Civ. P. 26(b). See 8 Wright & Miller, Fed. Practice & Procedure § 2007 (3d ed.). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial

if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(C)." Fed R. Civ. P. 26(b)(1). If "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues," then the court must limit discovery. Fed R. Civ. P. 26(b)(2)(C)(iii). District courts are given wide discretion when dealing with issues of discovery. See Cook v. Kartridg Pak Co., 840 F.2d 602, 604 (8th Cir. 1988).

While the United States Court of Appeals for the Eighth Circuit has not specifically addressed whether to allow discovery of two "substantially similar" tires, the court has dealt with comparable questions in analogous product defect cases. In Hofer v. Mack Trucks, Inc., the Eighth Circuit determined there was "no black letter rule of law regarding [product liability] discovery . . . other than to state that discovery of similar, if not identical, models is generally permitted." 981 F.2d 377, 380 (8th Cir. 1992). The Hofer court noted that "courts have undertaken a fact specific determination of the extent of the similarities or dissimilarities, and have inquired about the basis for the discovery request." Id.; see also Fine v. Facet Aerospace Products Co., 133 F.R.D. 439, 441 (S.D.N.Y. 1990) ("Generally, different models of a product will be relevant if they share with the accident-causing model those characteristics pertinent to the legal issues raised in the litigation.").

4

The United States District Court for the District of South Carolina addressed a similar situation. See Hartsock v. Goodyear Dunlop Tires N. Am. LTD, No. 2:13-cv-00419-PMD, 2013 WL 6919715, at *6 (D.S.C. Nov. 22, 2013), aff'd sub nom., Hartsock v. Goodyear Tire & Rubber Co., No. 2:13-cv-00419-PMD, 2014 WL 51237 (D.S.C. Jan. 7, 2014). In Hartsock, the defendant Goodyear Tire & Rubber Co., objected to allowing discovery information of ten tires with "different specifications, components, and . . . load capacities" than the subject tire. Id. at 6. The plaintiff argued one of his liability theories warranted demonstrating the tire's inner liner became overly thin during a faulty manufacturing process. Id. at 8. The court ruled for the plaintiff. Id. In reaching its decision, the court noted that discovery about similar tires is generally permitted and, at that point in the trial, the ten "other" tires were discoverable because the court had not yet been provided with information differentiating the specific inner liners of the tires. Id. at 6-8.

In light of the broad inclusion of similar tires in Hartsock, the Eighth Circuit's guidance in undertaking a fact specific determination, and Fed R. Civ. P. 26(b)(1) which states "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence," the court finds the white sidewall tire testing data and design drawings are discoverable. The black and white sidewall tires, though not identical, are substantially similar. The tires have the same load/speed index, overall diameter, overall width, tread depth and maximum load. (Docket 48-3); see also Hofer, 981 F.2d at 380; Hartsock, 2013 WL 6919715, at *6-8.

5

The court notes defendants agreed Mr. Bishop may use a prior deposition transcript of Richard Scavuzzo, a non-retained expert witness of the defendants, in lieu of deposing him again.  (Docket 64-2).  Mr. Scavuzzo's prior deposition testimony dealt with the "Inflation Retention Test Results of Motorcycle Tire Test," specifically MU85-16 narrow white sidewall tires. (Docket 64-3 at pp. 2, 4).  Defendants' agreement is more than a tacit admission that there are at least some substantial similarities between the black and white sidewall tires as related to the alleged defects.  If the differences between the two tires were profound, defendants would not rely on this testing to refute Mr. Bishop's allegations involving the excess mold ring flash and non-fill in the bead area.  (Dockets 60 at p. 3; 64-1 at p. 2).

Defendants' concerns regarding the degree of similarity between the white sidewall tires and the black sidewall tires can be resolved if and when Mr. Bishop offers the discovery information into evidence.  See Fed. R. Civ. P. 26(b)(1) Advisory Committee's Notes, 2000 Amendment.  The court grants Mr. Bishop's motion to compel the defendants to respond to the discovery requests.

**B.    Sanctions**

Federal Rule of Civil Procedure 37(a)(5) provides:

> If the motion [to compel discovery] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:

6

(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;

(ii) the opposing party's nondisclosure, response, or objection was substantially justified; or

(iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A) (emphasis added).

Because the court grants Mr. Bishop's motion to compel, it must evaluate expenses, including attorney's fees, unless one of the three exceptions is applicable. The first exception does not apply as Mr. Bishop made good faith efforts to resolve this matter without the court's intervention. (Docket 46 at pp. 4-6).

However, the second exception, that is, whether the objection was substantially justified, applies in this case. A litigant's position is "substantially justified" under Rule 37 when "there is a 'genuine dispute' . . . or 'if reasonable people could differ as to [the appropriateness of the contested action] . . . ." Oyen v. Land O'Lakes Inc., No. CIV. 07-4112, 2009 WL 536606, at *2 (D.S.D. Mar. 3, 2009) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)). Courts consider whether "an impartial observer would agree that a party had a good reason to withhold discovery." Handi-Craft Co. v. Action Trading, S.A., No. 4:02 CV 1731 LMB, 2003 WL 26098543, at *12 (E.D. Mo. Nov. 25, 2003) (quoting Brown v. State of Iowa, 152 F.R.D. 168, 173 (S.D. Iowa 1993)).

Defendants' objection to Mr. Bishop's motion to compel on the basis that he provided an insufficient correlation between the white sidewall tires and his

7

allegations of excess mold ring flash and non-fill in the bead area are well-taken, though ultimately unpersuasive. Mr. Bishop supplied *sufficient* evidence demonstrating that the testing data and design specifications for the white sidewall tires are reasonably calculated to lead to discoverable information. The court understands that "substantially justified does not mean 'clearly justified' or 'highly justified.'" Handi-Craft Co., 2003 WL 26098543, at *13 (citations omitted). The court finds defendants' objections were genuine, and the defendants withheld the requested information for reasonable and legitimate reasons. Mr. Bishop is not entitled to recover any costs or fees associated with the motion to compel.

II. **Motion to Designate an Expert Witness**

**BACKGROUND**

On October 2, 2013, the parties held a planning meeting and submitted a report in accord with Fed. R. Civ. P. 26(f) agreeing to certain deadlines, including those deadlines regarding expert witness disclosures. (Docket 19). Based on the parties' submissions, the court issued a scheduling order setting April 30, 2014, as the deadline for Mr. Bishop to make expert witness disclosures and June 30, 2014, as the deadline for defendants. (Docket 22 at p. 3). On April 11, 2014, the court extended those deadlines to June 30, 2014, for Mr. Bishop and August 29, 2014, for defendants. (Docket 38 at p. 1). On June 30, 2014, Mr. Bishop filed his designation of expert witnesses, identifying 25 non-retained medical experts and 15 organizations. (Docket 50-1).

Following his disclosures, Mr. Bishop made an appointment with Dr. Daniel R. Kraeger.  (Docket 45-2 at p. 2).  On September 22, 2014, Mr. Bishop's counsel delivered the records of that appointment to defense counsel.  (Docket 50 at p. 3).  Although Ministry Medical Group – Rice Clinic, was listed as a non-retained medical expert, Dr. Kraeger was not specifically mentioned in Mr. Bishop's expert witness disclosure list.  (Docket 50-1 at p. 7).  On October 10, 2014, Mr. Bishop moved the court to supplement his expert witness disclosure by designating Dr. Kraeger as a supplemental expert witness along with a provider who planned to complete a functional capacity exam.  (Docket 44).

Mr. Bishop maintains because he designated Dr. Kraeger's medical facility, Ministry Medical Group, the addition of Dr. Kraeger as a supplemental expert witness will not cause any undue prejudice to the defendants.  Id. at 1.  Mr. Bishop argues Dr. Kraeger is treating his orthopedic injuries and is best able to comment on his past, present and future ailments.  Id. at 3-4.  Defendants object to Mr. Bishop's motion, arguing: (1) organizations are not expert witnesses under Rule 26(a)(2), so Mr. Bishop's purported supplementation of Dr. Kraeger as an expert witness under the umbrella of Ministry Medical Group should be disallowed; (2) Dr. Kraeger is not a treating physician but rather an expert witness retained solely for trial; and (3) Mr. Bishop has not shown good cause or excusable neglect justifying an extension of the expert witness disclosure deadline and defendants will be prejudiced if the belated disclosure is allowed.  (Docket 49).

9

# DISCUSSION

## A. Dr. Kraeger's Designation as an Expert Witness

Federal Rule of Civil Procedure 26(a)(2) sets forth the requirements for expert disclosures, and provides, in pertinent part, as follows:

(A) In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.

(B) Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. . . .

\*\*\*\*

(C) Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

  (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and

  (ii) a summary of the facts and opinions to which the witness is expected to testify.

(D) A party must make these disclosures at the times and in the sequence that the court orders. Absent a stipulation or a court order, the disclosures must be made:

  (i) at least 90 days before the date set for trial or for the case to be ready for trial; or

  (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C), within 30 days after the other party's disclosure.

10

> (E) The parties must supplement these disclosures when required under Rule 26(e).

Fed. R. Civ. P. 26(a)(2).

Defendants correctly assert that a medical facility is not a valid expert witness available to offer testimony. (Docket 49 at p. 6). Expert witnesses must have the ability to testify at trial under Fed. R. Civ. P. 26(a)(2)(A). Ministry Medical Group does not possess this attribute.

Mr. Bishop's initial inquiry regarding the services of Dr. Kraeger was made in the pursuit of medical treatment. (Docket 45-2 at p. 2). Mr. Bishop testified he went to see Dr. Kraeger because Dr. Kraeger was an orthopedic doctor, and Mr. Bishop wanted answers from an orthopedist rather than other practitioners. (Docket 45-2 at p. 2). Plaintiff's counsel neither sought out Dr. Kraeger nor asked him to review medical records from a prior health provider for the purpose of offering expert opinion testimony. Id. While Dr. Kraeger asked Mr. Bishop to consult his lawyer before looking into a possible functional capacity test (Docket 45-4 at p. 5), it is clear Mr. Bishop initially sought out Dr. Kraeger's assistance strictly for treatment purposes. (Docket 45-2 at p. 2).

Dr. Kraeger's potential opinions are very important to Mr. Bishop's claims. (Docket 31). Dr. Kraeger is a treating physician of Mr. Bishop. (Docket 45-4). Dr. Kraeger, as a sports medicine orthopedist, is likely better able to diagnose and treat Mr. Bishop's injuries than Dr. Jones, an internal medicine specialist. (Dockets 45-3; 50-5). Because Dr. Kraeger knew Mr. Bishop before the accident, he may be able to form a more comprehensive opinion regarding the cause of Bishop's injuries. Id. at 2-3. Testimony from a

11

functional capacity examiner and Dr. Kraeger may be useful for the jury's resolution of issues at trial.

Under the circumstances of this case and in recognition of the Eighth Circuit's admonition that the exclusion of an expert witness is an extreme sanction that should be used sparingly, the court will permit the supplemental designation of Dr. Kraeger as an expert witness. See Citizens Bank of Batesville, Ark. v. Ford Motor Co., 16 F.3d 965, 967 (8th Cir. 1994) ("[T]o have not allowed [a witness'] testimony would have been a perversion of the trial process as a search for the truth and could have resulted in a miscarriage of justice.").

Justice is better served by allowing the designation of Dr. Kraeger and a functional capacity examiner as expert witnesses. Defendants are not prejudiced unduly by this ruling because no trial date has been set. If additional depositions are required in advance of trial, counsel must submit a proposed schedule to the court for the completion of discovery. Thereafter a pretrial order will be entered.

**ORDER**

In accord with the above discussion, it is

ORDERED that plaintiffs' motion (Docket 44) is granted. Plaintiffs shall designate Dr. Daniel Kraeger and a functional capacity examiner, if any, as expert witnesses within fourteen (14) days from the date of this order.

IT IS FURTHER ORDERED that plaintiffs' motion to compel (Docket 46) is granted. Defendants shall produce the discovery information to plaintiffs within twenty-eight (28) days of this order.

IT IS FURTHER ORDERED that if additional depositions are required in advance of trial as a result of this order, the parties shall submit a proposed schedule for the completion of all discovery. An order setting a pretrial conference and trial dates will follow.

Dated September 23, 2015

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
CHIEF JUDGE