1          UNITED STATES DISTRICT COURT

2           DISTRICT OF SOUTH DAKOTA

3              WESTERN DIVISION

4
   *    *    *    *    *    *    *    *    *    *
5  OTTO BISHOP; and STATE FARM,          CIV 13-5062
   MUTUAL AUTOMOBILE INSURANCE
6  COMPANY,
                      PLAINTIFFS,   MAY 10, 11, 2016
7          VS.                     RAPID CITY, SOUTH DAKOTA

8  THE GOODYEAR TIRE AND
   RUBBER COMPANY; and
9  GOODYEAR DUNLOP TIRE
   NORTH AMERICA, LTD,

10
           DEFENDANTS.
11  *    *    *    *    *    *    *    *    *    *

12
           PARTIAL TRANSCRIPT OF PRETRIAL CONFERENCE
13
           BEFORE THE HONORABLE JEFFREY L. VIKEN,
14        CHIEF UNITED STATES DISTRICT JUDGE

15  APPEARANCES:

16  FOR THE PLAINTIFFS: WILLIAM R. EDWARDS, III, ESQ.
                        The Edwards Law Firm
17                      802 North Carancahuast, Suite 1400
                        Corpus Christi, TX 78401
18
                        TERRY G. WESTERGAARD, ESQ.
19                      Bangs, McCullen, Butler, Foye & Simmons
                        P.O. Box 2670
20                      Rapid City, SD 57709

21  FOR THE DEFENDANTS: EDWARD S. BOTT, JR., ESQ.
                        Greensfelder, Hemker & Gale, P.C.
22                      10 South Broadway, Suite 2000
                        St. Louis, MO 63102

23

24

25
                      JUDITH M. THOMPSON
           (605) 348-8610    FAX  (605) 343-6842

```
 1                        PATRICK H. PUGH, ESQ.
                          Ballard Spahr, LLP
 2                        1225 17th Street, Suite 2300
                          Denver, CO 80202-5596
 3
                          BARBARA ANDERSON LEWIS, ESQ.
 4                        Lynn, Jackson, Shultz & Lebrun
                          P.O. Box 8250
 5                        Rapid City, SD 57709

 6   COURT REPORTER:      JUDITH M. THOMPSON, R.P.R.
                          Official Court Reporter
 7                        909 St. Joseph Street
                          Suite 505
 8                        Rapid City, South Dakota 57701

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          (The following in an excerpt from the pretrial

2     conference held May 10 and 11, 2016.)

3          THE COURT:  The jurors really seem to prefer that

4     and I talked to them about it many times in civil cases and

5     it seems to make most sense to them.

6          We do have an objection by plaintiff, docket 121,

7     to Mr. Lawrence testifying as an expert witness in this

8     case and it's a question as to the scope of his testimony,

9     not whether or not he will testify, but as to the scope and

10    whether he's a 702 expert.  Do you want to be heard on

11    that, Mr. Edwards?

12         MR. EDWARDS:  Our position on it is pretty

13    straight-forward.  Mr. Lawrence is an employee of Goodyear

14    and he regularly testifies on Goodyear's behalf.  At this

15    point he's actually an employee of Goodyear Tire & Rubber

16    Company, and he is here as a corporate representative for

17    Goodyear Dunlop Tires North America.  In any event, he's an

18    employee who regularly testifies on Goodyear's behalf.

19         The defendant identified him as non-retained

20    expert and did not provide a written report, but Rule

21    26(a)(2) says that if an employee is one whose duties is

22    the parties employ regularly involves giving expert

23    testimony, they need to provide a written report.  With no

24    written report, I don't believe that Mr. Lawrence should be

25    offered an expert witness.

1          THE COURT:  Mr. Bott.

2          MR. BOTT:  Your Honor, I think very simply this

3     ultimately gets down to the issue of whether or not

4     Mr. Lawrence's job responsibilities at that time regularly

5     involved giving expert testimony.  He's a member of what's

6     called the Product Analysis Group at Goodyear.  They do

7     examine tires involved in litigation.  That's a significant

8     part of what they do.  They provide counsel to the legal

9     department and they primarily provide 30(b)(6) testimony

10    and state counterparts for 30(b)(6) testimony.  And I

11    believe that I have the date right, that Mr. Lawrence was

12    disclosed as an expert in this case on or about October 1,

13    2014.

14          THE COURT:  I saw that.

15          MR. BOTT:  And at that time, well, yes, he had

16    testified as an expert on behalf of the company.  His

17    expert testifying experience was limited, and most of his

18    deposition experience was in the context of being a

19    30(b)(6) witness.  I was not involved in the case at that

20    time and Mr. Pugh and his firm were.  And I know that if

21    need be, he can explain perhaps better than I as to what

22    was going on in the case at that time.  But I do know

23    that -- you know, it's a subjective thing, I guess, as to

24    what is a regular part of someone's business practice,

25    again, taking it back to 2014 to give expert testimony.

1    And the disclosure identifies that Mr. Lawrence

2   would talk about his inspection of the tire, his results,

3   his conclusion on why this tire disabled.  Mr. Edwards has

4   known since really the inception of the case that Goodyear

5   inspected the tire, that its engineers inspected the tire.

6   He knows that from other cases as well as this case.   If

7   memory serves me correct, Mr. Edwards knew that Mr.

8   Lawrence has testified as an expert before.  And in fact,

9   he's testified on these very issues before under

10  cross-examination by Mr. Lawrence because Mr. Edwards and I

11  had a case together in Washington State by the name of

12  Clutchey which is on this chart that he gave you.  And in

13  the context of that case, Mr. Edwards had the opportunity

14  to fully cross-examine Mr. Lawrence on principles of

15  over-deflection and evidence on the tires and what it

16  means.  Now, granted that's a different tire.  But it's

17  interesting that Mr. Edwards did nothing to request either

18  a report or a deposition of Mr. Lawrence from October 1 of

19  2014 all the way up to the time of trial, despite the fact

20  that we clearly indicated t him that he was going to be

21  offering these expert opinions.

22    And so, number one, we think Mr. Lawrence should

23  be allowed to testify and we would certainly offer to

24  provide a report at this point.  And also I would point out

25  that there's factors that go to -- that I think this

circuit in South Dakota recognizes in terms of evaluating whether or not the appropriate remedy is to bar the witness from testifying, even if you think a report should have been provided. And under those factors, I have explained to you, trying to explain the reason for the fact the report was not given.

The surprise and prejudice to Mr. Edwards I think is not a surprise because we had told him he was going to be testifying as an expert; and little prejudice because he knows these theories and chose to not ask for a report or for a deposition.

And his testimony is very important to us because he's an in-house engineering representative who has an opportunity to speak to the jury on behalf of the company as to what it found from inspection of this tire, not an outside retained expert. And that is significant to us.

And also it won't really disrupt the trial proceedings in any way, which is another factor that is looked to, because he will be testifying as a corporate representative even as part of Mr. Lawrence's case -- excuse me -- Mr. Edwards' case, and it's very similar to what happened in the Clutchey case where he -- Mr. Edwards did not call him as part of his case as an adverse witness, so we put on Mr. Lawrence in our case. He testified as a corporate representative and then we just went in to his

1  opinions on the tire analysis, and it really didn't

2  unnecessary delay or prolong or adversely impact the timing

3  of all of that.

4       So for all those reasons we would ask that the

5  Court not bar Mr. Lawrence and that he be allowed to

6  testify to his opinions regarding his inspection and

7  opinions regarding the failure.

8       THE COURT:  Of course, it's not a question of

9  barring Mr. Lawrence; 30(b)(6) he can testify about the

10  corporation and how they operate and how these things are

11  manufactured.  The question is when it comes down to this

12  cause of action and this tire.

13       MR. BOTT:  Yes.  I misspoke.

14       THE COURT:  I am just trying to clarify for our

15  record how narrow the exclusion is.  You know, Rule

16  26(a)(2) puts the burden on the party identifying an expert

17  witness or a witness who is an employee of Goodyear Dunlop

18  whose duties for the parties regularly involve giving

19  expert testimony.  The burden to produce that written

20  report and all the detail that's required in the report is

21  on Goodyear Dunlop.  It's not something that's handled some

22  other way.

23       Now, part of the reason that I have sometimes the

24  chagrin of plaintiff or defense counsel, it's limited the

25  scope of testimony of a 30(b)(6) witness not properly

1    disclosed under 26(a)(2), is that if I don't do that, there

2    is no Rule 26(a)(2), and people strategically find all

3    kinds of reasons to not produce a report.

4         I was in trial practice of personal injury,

5    wrongful death, product liability for 21 years.  I know

6    what both sides do with the rules if they can find a judge

7    who will make an exception.   It makes a difference here as

8    to whether we enforce them or not.  So I will take a look

9    at it.  Is there more argument on that subject?

10        MR. BOTT:  No further argument, Your Honor.  And

11   we have, again, as I mentioned in response to one of the

12   motions earlier, we have three short reply briefs on these

13   issues that we'd like to probably file with the Court, if

14   we would have leave.  But the arguments are in essence what

15   I have vocalized.

16        THE COURT:  Do you have a reply brief on this

17   point?

18        MR. BOTT:  We have a reply brief on this, we have

19   a reply brief on the testing, which I mentioned to you,

20   which gets into the analysis of the case law.  And we have

21   one on the other similar occurrence which, I mean, the

22   other one was other similar incidents.  So those three.

23        THE COURT:  Well, two of them we have taken care

24   of, haven't we?

25        MR. BOTT:  We have.

1    THE COURT:  This one I'd be happy to receive a

2  reply brief, if you would file it.  Then it will be

3  electronically served on plaintiff's counsel.  I would like

4  to take a look at this.  I am not interested in acting in a

5  harsh way toward a particular party in any civil case, but

6  I am very interested in my responsibility to apply Rule

7  26(a)(2) and to avoid the innumerable perils that come from

8  finding exception to that rule, if there isn't good cause.

9  So I expect we'd have that this afternoon.

10    Well, let's start with that tomorrow.  Let's take

11  it up and I will hear argument on it and I will consider it

12  more thoroughly this evening when I have your reply.

13    So we will break now.  10:30 tomorrow morning we

14  will reassemble.

15    I really am impressed by and grateful for the

16  work that counsel for plaintiff and defendant have put into

17  this case.  It has its complexities and it's been very

18  thoroughly prepared.  I appreciate that and I appreciate

19  your diligence working through the pretrial conference.

20  You've made good progress and we will finish up tomorrow.

21    So with that, you are off to your deposition and

22  we will see you tomorrow morning at 10:30.

23    (Court adjourned at 3 o'clock p.m.)

24    (Following proceedings in open court May 11,

25  2016.)

1      THE COURT:  We are resuming our pretrial

2  conference in the case of Bishop versus Goodyear Dunlop.  I

3  believe we were to the point of the plaintiff's motion to

4  exclude expert testimony from the witness, Jay Lawrence.

5      Would you like to be heard on this, Mr. Edwards?

6      MR. EDWARDS:  I don't know that I need to be

7  heard any more on it.  I did file a motion for leave to

8  file a reply to their response; they filed their response

9  yesterday afternoon.  I filed a motion for leave this

10  morning, for what it's worth, and I would point out that I

11  emphasize in the first part of that that Mr. Lawrence

12  actually is not an employee of Harley Goodyear Dunlop; he's

13  actually an employee of Goodyear Tire & Rubber Company.

14  And in his deposition I asked him were there times when he

15  worked for both Goodyear Tire & Rubber Company and Goodyear

16  Dunlop and his response is:  I am employed by Goodyear Tire

17  & Rubber Company.  The department I work in provides a

18  service to Goodyear Dunlop.

19      So at this point he's not even an employee of the

20  party, and so I don't believe the exception for an employee

21  would even apply.  If it were to apply, in their response

22  the defendant points out that he has testified four times

23  as an expert.  They don't disclose how many times he has

24  been designated as an expert without testimony.  There's

25  still no identification of the cases where he was either

1    designated or where he testified.  There's still plenty of

2    shortcomings from the information that would have been

3    provided in a proper report.  That information still is not

4    available to us.  And certainly there's not available to us

5    the kind of detail about specific opinions and specific

6    pieces of information on which he relies to come to those

7    opinions.

8          It's also suggested in the response that's filed

9    by Goodyear Dunlop the notion that he was identified as an

10    expert in a prior case, the Clutchey case in the State

11    Court of Washington; and I deposed him as an expert in that

12    case and he testified in that trial as an expert.  But in

13    that case, it was a case involving a similar tire; it was a

14    case involving similar allegations by the plaintiff on the

15    defect theory; but in that case the defense was

16    dramatically different.  In that case, Mr. Lawrence and the

17    retained outside expert in that case both agreed with

18    Mr. Woehrle on the mode of failure of the tire, not what

19    caused the failure of the tire, but the mode of failure.

20    That is getting down to less than 10 psi in the tire and

21    causing catastrophic failure due to substantial elevation

22    in temperature.  They agreed with Mr. Woehrle in that

23    respect.

24          Their defense in that case was there was a piece

25    of road hazard that lodged in the tread.  There was a

1   forensic examination afterward that showed a cut in the

2   tread all the way through into the air chamber.  And

3   Goodyear's defense in that -- Goodyear Dunlop's defense in

4   that case was that they picked -- the tire picked up a road

5   hazard, a piece of metal on the road, that it lodged and

6   caused a slow leak that led to less than 10 psi in the

7   tire.

8          Here the defense is completely different than

9   that.  They are saying there was -- this tire did not make

10  a 10 psi.  They are saying that this was a long-term

11  development; that it was this tire being run at an

12  under-inflated condition, but not so low as 10 psi.  And so

13  that the two cases were different in terms of defense and

14  the expert opinions that are coming in support of that

15  defense between the two cases, so the fact that Mr.

16  Lawrence -- I was exposed to Mr. Lawrence's opinions in our

17  case doesn't do anything with respect to the failure to

18  adequately disclose them in this case.

19          Finally, the last thing that I point out in the

20  reply that I filed is that this is not completely pulling

21  the rug out from underneath Goodyear Dunlop's ability to

22  present a defense in this case.  They have a retained

23  expert, Mr. Follen, who can testify and give an expert

24  opinion.

25          With that, I think I have spoken my piece.

1    THE COURT:  Let me ask you, Mr. Edwards:  at this

2    point, trial commencing 9:00 a.m. on Monday morning, are

3    you requesting that a proffer Rule 26(a)(2) report be

4    prepared in the event Mr. Lawrence is permitted to testify

5    on expert matters, that a proffer report be prepared and

6    disclosed to plaintiff?

7    MR. EDWARDS:  If he's going to be allowed to

8    testify, I would request that.  However, we are very short

9    in time before getting ready for trial.  I've actually got

10   a fairly full schedule between now and Monday, and it puts

11   me in a significant disadvantage to receiving a written

12   report now as opposed to earlier.

13   THE COURT:  Well, the element of surprise to the

14   plaintiff in the event Mr. Lawrence testifies as an expert,

15   we apparently don't know the full range of his opinions, at

16   least not as a signed report under 26(a)(2) and prejudice

17   to Mr. Bishop.  I was interested to know whether the

18   production of such a report would at least give you

19   guidance on elements required in such a report and those

20   under 26(a)(2) would include a complete statement of all

21   opinions that Mr. Lawrence will express and the basis and

22   reasons for the opinions in the case.

23   Secondly, the facts and data considered by Mr.

24   Lawrence in forming the opinions.

25   Third, any exhibits that he intends to use to

1   summarize and support his opinions.

2          Fourth, his qualifications, including the list of

3   all publications offered in the previous ten years.

4          Fifth, a list of all other cases in which during

5   the previous four years the witness testified as an expert

6   at trial or by deposition.

7          And sixth, the statement of the compensation to

8   be paid for the study and testimony in the case.

9          So properly prepared 26(a)(2) reports signed by

10  an expert would include all those elements.  If I line

11  those up with what's been disclosed in the initial

12  October 2014 identification as Mr. Lawrence as a potential

13  expert and where we are today in the case, there are some

14  differences between what a report would contain and what it

15  appears you have received so far.  That's the purpose of my

16  question.

17         I have got to balance remedies here.  If indeed

18  this rule applies, 26, and there's a potential sanction for

19  that, I have to weigh what possible remedies I have.

20         MR. EDWARDS:  In terms of weighing the remedies,

21  the cases discussing the factors do say that it is -- that

22  the first step in the process is that proponent of the

23  expert show and has confirmed to show that the failure was

24  substantially justified or is harmless.  And in this

25  instance, I don't believe Goodyear Dunlop has actually met

1  their burden of showing that it was substantially -- the

2  omission of the written report would substantially justify

3  the report as harmless.

4       You know, the fact that they tell the Court in a

5  pleading without an affidavit of anybody supporting that

6  Mr. Lawrence has testified as an expert four times in prior

7  cases without any effort to identify what those cases are,

8  to me demonstrates that Goodyear Dunlop is trying to avoid

9  putting Mr. Lawrence on the record getting him tied down

10  with written things.  To me that's an indication that there

11  was a reason for not filing a written report in this case.

12  He's somebody with the company that is regularly involved

13  in the litigation, and now they are not -- they haven't

14  come forth with the information that should have been

15  provided.  And secondly, if not provided, Rule 37(c), which

16  the courts rely upon in talking about the factors, says

17  that -- talks about unless the failure was substantially

18  justified as harmless.  Then the Eighth Circuit as well as

19  the other circuits talk about factors, but they talk about

20  factors -- and there's case law to this effect -- that the

21  case law says these factors should be considered; it does

22  not say shall be considered.  The Court still has the

23  automatic, the automatic sanction of excluding the expert

24  testimony available to it absent the showing that it's

25  required.

1          It is going to be harmful to the Bishop case, to

2     Mr. Bishop, and you know the fact is they simply did not

3     provide a written report.  And if the remedy is, if the

4     remedy is, well, we will simply provide the opposing party

5     a written report five days before trial, then what's the

6     purpose of initial disclosure in the first place?

7          THE COURT:  In other words, you wouldn't have an

8     opportunity to go out, secure a transcript of the

9     deposition previously given for trial, testimony previously

10    offered by the witness, or otherwise conduct the kind of

11    attorney work that would permit you to meet the testimony

12    or undermine -- challenge the credibility?

13         MR. EDWARDS:  Correct.

14         THE COURT:  The case is Wegener, W-e-g-e-n-e-r,

15    versus Johnson, 527 F.3d 687, Eighth Circuit 2008.  That's

16    the case and numerous following cases in district courts

17    citing as a setup four factors to consider.  In this

18    circuit, that's the case to which I think you were

19    referring.  The four factors are pretty consistent across

20    the case law, generally.  But, I mean, the factors are:

21    the reasons for noncompliance, the surprise and prejudice

22    to, in this case, Mr. Bishop's team, the extent to which

23    allowing the testimony would disrupt the order and

24    efficiency of the trial.  That doesn't seem to be a major

25    factor.  And importance of the testimony.  So those are the

1    factors the circuit identifies.

2         So there you are saying the only adequate remedy

3    at this juncture of the plaintiff is the exclusion of

4    Mr. Lawrence as an expert?

5         MR. EDWARDS:  Yes.  And it's not tantamount, it's

6    not the same as completely depriving the party of any

7    expert testimony.  They still have their outside retained

8    expert, Mr. Follen.

9         THE COURT:  Well, the cases that speak to extreme

10    remedy, the extreme nature of a remedy is to exclude any

11    possibility of presenting the evidence, not having an

12    opportunity to provide from some other source.  Is that the

13    way you see it?

14         MR. EDWARDS:  Yes.

15         THE COURT:  Anything else on this point?

16         MR. EDWARDS:  Nothing else, Your Honor.

17         THE COURT:  Well, Mr. Bott, Mr. Pugh, your

18    position on this.  Thank you for your filing.

19         MR. BOTT:  Thank you, Your Honor.  There's

20    probably not much to say in furtherance of yesterday.  I do

21    want to respond a little bit to Mr. Edwards, and that is I

22    can assure you and the Court there was no intention to

23    withhold anything regarding the facts and background

24    experience of Mr. Lawrence.

25         My understanding is that the decision was made

1  that he did not fall within the rule as someone who

2  required disclosure of a report because of the fact that at

3  that time in particular, it was evaluated and it was not a

4  regular form of his activities to testify as an expert as a

5  30(b)(6) witness.

6         Mr. Lawrence since then has testified more as an

7  expert and there is a case list that I believe Mr. Edwards'

8  office has on Mr. Lawrence, because their office does a lot

9  of tire litigation and they are familiar with Jay Lawrence

10  and I think they have this information.

11         So when we start talking about the prejudice to

12  the plaintiff, I would submit to you that the theories of

13  what we are talking about here in terms of over-deflection,

14  and how tires fail when subjected to over-deflection is a

15  science that Mr. Edwards' firm is well-acquainted with;

16  there are depositions of many, many experts.

17         And I would again point out while

18  their disclosure was made in October of 2014, Mr. Edwards

19  presumably understood at the time that no report was

20  provided.  And rather than try to approach defense counsel

21  with the suggestion that, hey, I need a report or I am

22  going to move to strike this gentleman, he accepted that.

23  So if there's prejudice, he in part kind of did so at some

24  risk, perhaps, but, you know, I think the spirit of

25  cooperation in litigation is to try to approach counsel to

1    resolve those types of things and to not sit back and try

2    to use it as a sword at the time of trial.  And here we've

3    had a year and a half to get this resolved.  It's not as

4    though somebody would be doing this on the eve of the

5    trial.

6            So Mr. Lawrence is working on a report.  He's out

7    of the hospital, Your Honor.  Some of the information in

8    terms of the statement about four times as a witness

9    without an affidavit, it was necessitated, I think, because

10    of the timing of some of this.  We didn't have time to get

11    affidavits and things.  But nevertheless, we are working

12    on a report and we intend to provide that to the Court, you

13    know, either as part of what he would testify to or,

14    depending on the Court's ruling, as an offer of proof.

15            THE COURT:  I think the four times of testifying

16    and giving deposition testimony was as of October of 2014,

17    wasn't it?

18            MR. BOTT:  It was.

19            THE COURT:  And so since October of 2014 have

20    there be depositions and testimonial appearances by

21    Mr. Lawrence?

22            MR. BOTT:  There have.

23            THE COURT:  Do you know how many?

24            MR. BOTT:  I do not know that.  He had been --

25    well, I forget whether it was the Clutchey trial, I

believe, was in November of 2014.  And that was one

Mr. Edwards was involved in.  How many times he testified

as an expert since then, I do not know.

　　　　But what had always -- by way of history, Your

Honor, the Goodyear Product Analysis Group, you know, from

my experience in representing them, which goes back to

about 2010, so what they would do is -- it is an

engineering group that would receive tires, inspect tires,

provide assistance to the legal department.  Typically

those engineers did not testify as outside experts.  It's

only been in recent years that that role has changed

somewhat.  And so at the time this disclosure was made,

it's my understanding that Mr. Lawrence had testified four

times in either deposition or trial as an expert.  But

since then, yes, he has testified some additional times,

but it wouldn't, I don't think -- I shouldn't say, because

I don't know how many, but he has been disclosed as an

expert and testified as an expert in other cases.

　　　　THE COURT:  So all of his testimony both by

deposition or trial appearance would be in connection with

his employment by Goodyear Dunlop or some other corporate

entity connected to it?

　　　　MR. BOTT:  Correct.  And the whole employment

issue, he's an employee of the Goodyear Tire & Rubber

Company.  And as I mentioned to the Court yesterday,

1    Goodyear was part of a joint venture in operation of

2    Goodyear Dunlop Tires North America.  And it was in or

3    around that 2010 time frame that Mr. Lawrence became part

4    of, well, what is the product analysis person primarily

5    responsible with becoming familiar with the practices of

6    the Goodyear Dunlop tire facility and spent considerable

7    time at that facility.  And Goodyear -- the Product

8    Analysis Group at Goodyear then assumed the role of

9    providing in that same time, consultation with the legal

10   department on Goodyear Dunlop cases that they had been

11   providing.

12        THE COURT:  So was he providing services to

13   Goodyear Dunlop, as Mr. Edwards suggests, so really he's

14   just a -- he's not an employee, he's actually an expert,

15   then there would be no question.

16        MR. BOTT:  He's not an employee of Goodyear

17   Dunlop.  I think that all his compensation comes from the

18   Goodyear Tire & Rubber Company.  So I do not think that he

19   would have performed services for Goodyear Dunlop and

20   received separate compensation for that.  It would be all

21   part of his general job duties and responsibilities for the

22   Goodyear Tire Company program.

23        THE COURT:  Let me just make sure I am clear.

24   Are you saying that during the critical time frames here

25   between this wreck and the October 2014 identification

1    without a Rule 26(a)(2) report, so that there's some shift

2    in his employment or his status that's had some effect on

3    this issue?

4        MR. BOTT:  No.  His legal employment has always

5    been with the Goodyear Tire & Rubber Company.  And within

6    the Goodyear Tire & Rubber Company is a group called

7    Product Analysis, which is a group of five engineers.  They

8    look at tires involved in claims as part of their

9    responsibility.  Prior to the 2010 time frame, if there

10   were tires involved in litigation coming out of Goodyear

11   Dunlop, not Goodyear, but Goodyear Dunlop, that type of

12   analysis would have been provided by people at Goodyear

13   Dunlop in New York.  And what I am trying to explain is

14   that it was in that 2010, '11, '12, '13, time frame that

15   those duties were being transitioned to the Product

16   Analysis Group at Goodyear, and specifically to Mr.

17   Lawrence, so that he was at the plant in Buffalo on

18   numerous occasions to learn all the details of the business

19   operations at Goodyear Dunlop so he would be in a position

20   to testify as a corporate representative and that's, as I

21   said, later, but led him to a change in company approach to

22   some of the litigation where we started using the in-house

23   people as engineers to testify as experts.

24       THE COURT:  So if Mr. Lawrence testifies as the

25   corporate representative under the rule, but does not

1  testify about this particular tire failure or wreck, what's

2  the prejudice to Goodyear Dunlop?  Because you have

3  Mr. Follen as an identified expert who speaks to all issues

4  of Mr. Woehrle, the plaintiff's expert speaks to.

5      MR. BOTT:  We do.  The only disadvantage there

6  would be in the sense that the jury would not be allowed to

7  hear from an engineer at Goodyear Dunlop that from the

8  company itself, I should say, on failure analysis of the

9  tire.  It would simply be through the retained expert, Mr.

10  Follen.

11      THE COURT:  Well, there's nothing in Rule

12  26(a)(2) that requires opposing counsel to make a request

13  for the report.  There's nothing in 26(a)(2) that requires

14  someone to negotiate with counsel later an initial

15  disclosure; and part of it, even the change in the civil

16  rules, is all geared toward the efficient and inexpensive

17  resolution of litigation and the initial disclosure rules

18  are important in moving the case forward.  26(a)(2) is also

19  not dependent on who opposing counsel is and how familiar

20  they are with the case or theories in other cases or the

21  history and background of Mr. Lawrence.  It's all on the

22  point that proper reports, all the elements identified

23  under the rule be produced so that counsel, as I am sure

24  you have done as an experienced attorney in cases, has an

25  opportunity in using your team to run all of that down and

1    prepared meet the proposed expert testimony as well as try

2    to undermine the credibility of the witness.

3              So I am concerned about this.  The exclusion

4    would be an extreme remedy in terms of excluding Mr.

5    Lawrence's expert testimony if Goodyear Dunlop had no other

6    expert witness to meet the Woehrle expert testimony, but

7    that's not the situation.  I don't think in terms of

8    looking at the factors that we have, as I said, a

9    particular problem with the disruption of the order of

10   efficiency of trial.  Frankly, having tried plenty of

11   products liability cases and engaged in the discovery

12   procedures before they resolved, an expert getting on the

13   stand to express opinions without limitations placed on

14   that person by the initial disclosure report of 26(a)(2),

15   the opportunities for surprise and mischief are really

16   extreme.  A person, in fairness, doesn't really know where

17   that expert is going to go.  And part of the purpose of

18   26(a)(2) and the obligation to continuously update those

19   opinions as they develop is really critical to the

20   adversarial system so the jury gets the whole picture of

21   what that testimony is.  And we don't have any boundaries

22   at this point on Mr. Lawrence's proposed expert testimony.

23   The result of that, of course, is prejudice.  And the

24   importance of his testimony as an expert is, much of it, I

25   think from what I can tell, is a repeat of what the

1   retained expert, Follen, would say, so the jury would hear

2   twice instead of once, and that is not, I don't think,

3   highly prejudicial to Goodyear Dunlop.  It has its expert

4   and the case is well-developed, as are the defenses through

5   what I have seen from defense so far in the case.

6           So the importance of Lawrence's testimony is not

7   such that weighing these factors so as to exclude his

8   testimony as an expert is any way an extreme remedy in this

9   particular case.

10          The other reality, and it has to be taken

11  seriously, is that these rules were not intended to be the

12  subject of strategic maneuvering and gamesmanship.  I will

13  take you at your word that that's not what is happening in

14  this case.  But if courts do not enforce the 26(a)(2) in

15  initial disclosures when it appears to me that from our

16  record that Mr. Lawrence is clearly covered by that, even

17  with four testimonial appearances, given what I understand

18  from everyone to be his other job duties, to not enforce

19  that rule is really to invite the kind of open strategic

20  warfare that used to take place in civil cases and for many

21  lawyers still as a major part of the reason we get up every

22  morning.  It really is disruptive of the whole trial

23  process in reaching a just verdict.

24          So my balancing of these factors under the

25  applicable case law is that he's certainly a 30(b)(6)

1    witness for Goodyear Dunlop, but I am not going to permit

2    him to testify as an expert witness in the case as to any

3    matter connected with his record or any matter that would

4    be in the form of expert testimony.  You have Mr. Follen

5    for that and that's my ruling.

6         Now, if you want to make a record, an offer of

7    proof, I would be happy to hear it; or if you want to put

8    it in at a later time for any appellate record, that's fine

9    with me as well.

10        MR. BOTT:  I think probably at a later time, Your

11   Honor.  That's fine.  I understand the Court's ruling.  I

12   anticipate maybe as we go into the trial, Mr. Lawrence

13   testifies, and in the interest of completeness when he does

14   take the stand, to try to get everything covered at one

15   point there might be issues that I would like to come back

16   to this with the Court to see if he would be permitted to

17   testify to certain subjects, just so that that is out

18   there.  You can address that now or wait until it comes up.

19        THE COURT:  Well, it makes sense as you suggest

20   to wait until it comes up.  We will see what the testimony

21   landscape is at that point.  And if you want to ask for

22   reconsideration of this ruling, then we will take it up and

23   I will hear from the parties.

24        MR. BOTT:  I don't anticipate it would be

25   anything specifically related to this tire at all.  I

JUDITH M. THOMPSON
(605) 348-8610     FAX  (605) 343-6842

1    wouldn't go there.  It would be just maybe, perhaps,

2    general scientific principles.

3              THE COURT:  Anything else on this point, Mr.

4    Bott?

5              MR. BOTT:  No thank you, Your Honor.

6              THE COURT:  Mr. Edwards.

7              MR. EDWARDS:  Nothing else.

8              (End of partial transcript.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    COURT REPORTER'S CERTIFICATE

2    STATE OF SOUTH DAKOTA  )
                            SS
3    COUNTY OF PENNINGTON   )

4        I, Judith M. Thompson, R.P.R., Official Court Reporter in

5    and for the United States District Court, District of South

6    Dakota,

7        DO HEREBY CERTIFY that I acted as such Court Reporter at

8    the Hearing of the within-entitled action, and that the

9    foregoing partial transcript, pages 1 to 27, inclusive, is a

10   true and complete transcript of my shorthand notes taken at

11   said Hearing.

12       Dated at Rapid City, South Dakota, this 5th day of

13   September, 2016.

14

15

16                              /s/
                        _____
17                      Judith M. Thompson, R.P.R.
                        Official Court Reporter
18

19

20

21

22

23

24

25